## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DAVID HARVEY, | ) | CASE NO. 1:12CV3037 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| SAMUEL TAMBI, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, David Harvey ("Harvey"), challenges the constitutionality of his conviction in the case of *State v. Harvey*, Richland County Court of Common Pleas Case No. 2009-CR-0663. Harvey, *pro se*, filed his Petition for a Writ of Habeas Corpus (Doc. No. 3) pursuant to 28 U.S.C. § 2254 on December 12, 2012.  On August 2, 2013, Warden Samuel Tambi ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 16.)  Harvey, through counsel, filed a Traverse on March 10, 2014.  (Doc. No. 24.)  Upon Order of the Court, the parties submitted supplemental briefing on April 11, 2014 regarding Grounds Two and Three of the Petition.  (Doc. Nos. 30, 31).  On April 18, 2014, Harvey submitted a Notice of Supplemental Authority with respect to Grounds Two and Three.  (Doc. No. 32.)  Finally, on April 22, 2013, Harvey submitted a Correction to his Supplemental Brief for Grounds Two and Three.  (Doc. No. 33.)

For reasons set forth in detail below, it is recommended that Harvey's Petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. §

2254(e)(1); *see also Franklin v. Bradshaw,* 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v.

Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts

underlying Harvey's conviction as follows:

> {¶ 3} On May 24, 2009, five-year old M.S. was at her great-grandparents' house
> after church when Carol Harvey, Appellant's legally blind wife, asked M.S. why
> she was not wearing underwear under her church clothes.  M.S. reported to her
> great-grandmother that Appellant had removed her underwear, kissed her on the
> lips, touched her on her privates, and tried to "put his bottom [penis] into her
> bottom [vagina].
>
> {¶ 4} Mrs. Harvey contacted M.S.'s parents, S.S. and J.S, [FN1] who came over
> immediately.  The parents took M.S. to Med Central Hospital for a sexual assault
> examination.  The examination revealed redness in her vaginal area and three
> small bruises on the back of her thigh which appeared to be fingerprints.  M.S.
> was subsequently interviewed and reported that Appellant had sexually assaulted
> her previously.  M.S. stated that it happened "all the time" and that her clothes
> were typically removed during the encounters.  M.S. additionally reported that
> Appellant had made her touch his private parts in the past, but that the most recent
> time he had just "put his bottom in her bottom."
>
> FN1. Initials are used to attempt to protect the identity of the minor child.
>
> {¶ 5} Additional investigation revealed allegations that Appellant had also
> sexually abused other children in the family, including his own daughter, D.K.,
> and his grandchildren, B.H., J.H., K.K., and C.K.
>
> {¶ 6} Pastor Sonny Thayer of the Marion Avenue Grace Brethren Church had
> previously been made aware of the allegations and had encouraged the family to
> keep the matter private.  Instead of reporting the allegations to the authorities,
> Pastor Thayer counseled Appellant regarding the sexual abuse.
>
> {¶ 7} Appellant suffered a stroke in the summer of 2008 and his ability to speak
> became limited.  He was, however, able to function by completing his daily
> activities and could communicate in a limited manner.  He was able to provide
> short answers, he understood questions that were asked to him, and was able to

identify family members by sight, and some by name.

{¶ 8} On May 27, 2009, Sergeant Jeff McBride of the Richland County Sheriff's Office went to Appellant's residence to conduct a taped interview with Appellant. Appellant had difficulty communicating because of his stroke; however, it was the opinion of Sergeant McBride that Appellant was fully cognizant of the conversation, he was able to answer questions with yes or no answers, short phrases, and gestures.  During the interview, Appellant admitted to sexually assaulting all of the victims with the exception of B.H.

{¶ 9} As a result of the investigation, the Richland County Grand Jury indicted Appellant on one count of gross sexual imposition as it relates to M.S., a felony of the third degree, in violation of R.C. 2907.05 with a sexually violent predator specification pursuant to R.C. 2941.148.  Additionally, the Grand Jury indicted Appellant on three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), as they relate to victims J.H., K.K., and C.K.

{¶ 10} On September 11, 2009, Appellant filed a written plea of not guilty by reason of insanity.  He also requested an evaluation to determine whether he was competent to stand trial.  The trial court referred Appellant to the District V Forensic Diagnostic Center for evaluation.  Dr. James Karpawich reviewed Appellant's medical records and conducted an interview with Appellant.  Based on the interview and Appellant's medical records, Dr. Karpawich determined that Appellant was incompetent to stand trial because he lacked the ability to understand the nature of the proceedings against him and that he could not assist his attorney in his defense.

{¶ 11} Subsequent to Dr. Karpawich's evaluation, the trial court conducted a two day competency hearing, wherein defense counsel presented testimony from Dr. Karpawich, Appellant's daughter, D.K., who he has also been accused of molesting years earlier, and her husband, J.K.

{¶ 12} The State of Ohio called several witnesses as well.  First, they called Richland County Adult Probation Officers Dan Myers and Lisa Snay, who were both involved in Appellant's pretrial supervision.  Additionally, the State called M.S.'s parents, S.S. and J.S., Appellant's son, Ken Harvey, and Detective McBride.

{¶ 13} In rebuttal, Appellant then called Pastor Lester Vnasdale of the Grace Brethren Church.

{¶ 14} Following the presentation of the evidence, the trial court issued a written opinion on January 14, 2010, finding the Appellant competent to stand trial. Appellant filed a motion for reconsideration, which the trial court denied.

-3-

Appellant then entered a no contest plea to the indictment.

{¶ 15} Appellant was sentenced to an aggregate term of eleven years to life in prison with a mandatory five years of post release control.  Appellant was additionally ordered to register as a Tier III sex offender.

*State v. Harvey*, 2011 WL 883763 at * 1-2 (Ohio App. 5th Dist. March 4, 2011).

## II.  Procedural History

### A.      Conviction

On September 3, 2009, a Richland County Grand Jury charged Harvey with one count of Gross Sexual Imposition in violation of Ohio Revised Code ("O.R.C.") § 2907.05(A)(4) relating to M.S., together with a sexually violent predator specification pursuant to O.R.C. § 2941.148; and, three counts of Gross Sexual Imposition in violation of O.R.C. § 2907.05(A)(4) relating to victims J.H., K.K., and C.K. (Doc. No. 16-1, Exh. 1.)  *See also State v. Harvey*, 2011 WL 883763 at * 1.

On September 11, 2009, Harvey filed a written plea of not guilty by reason of insanity and requested the Court appoint an examiner to determine his competency to stand trial.  (Doc. No. 16-1, Exh. 2.)  The trial court thereafter referred Harvey to the District V Forensic Diagnostic Center for evaluation.  (Doc. No. 16-1, Exh. 3.)  Dr. James Karpawich, a clinical psychologist, reviewed Harvey's medical records, performed psychological testing, and conducted a clinical interview.  (Doc. No. 21-1, Exh. 7.)   In a Psychological Evaluation report issued on October 20, 2009, Dr. Karpawich concluded Harvey was not capable of understanding the nature and objectives of the legal proceedings against him and of assisting his attorney in his defense. (Doc. No. 21-1, Exh. 7 at p. 7.)

The trial court conducted a two day competency hearing on December 15, 2009 and

-4-

January 4, 2010.  (Doc. No. 16-1, Exh. 27.)  Harvey presented the testimony of his daughter D.K. and her husband J.K, as well as the testimony of Dr. Karpawich.  *Id.*  The State called Richland County Adult Probation Officers Dan Myers and Lisa Snay, who were involved in Harvey's pretrial supervision.  *Id.*  In addition, the State called M.S.'s parents (S.S. and J.S.); Harvey's son Ken Harvey; and Sergeant McBride.  *Id.*  In rebuttal, Harvey called Pastor Lester Vnasdale of the Grace Brethren Church.  *Id.*

On January 14, 2010, the trial court issued a written opinion finding Harvey competent to stand trial.  (Doc. No. 16-1, Exh. 4.)  Harvey moved for reconsideration of that decision, and requested further evaluation of Harvey's competency.  (Doc. No. 16-1, Exh. 5.)  He also requested a hearing on a no contest plea, should the trial court deny his motion for reconsideration.  *Id.*

On January 29, 2010, the trial court denied Harvey's motion for reconsideration and set a plea hearing, which was conducted on February 8, 2010.  (Doc. No. 16-1, Exh. 6.)  At that time Harvey withdrew his original plea of not guilty and executed a written plea of no contest as to all counts of the indictment.  (Doc. No. 16-1, Exhs. 7, 28.)  The trial court accepted his plea and found him guilty.  (Doc. No. 16-1, Exh. 7.)

The trial court conducted a sentencing hearing on March 22, 2010.  (Doc. No. 16-1, Exh. 29.)  On March 24, 2010, the trial court issued a Sentencing Entry, imposing a term of five years to life on Count One; and two years each on Counts Two, Three, and Four.  (Doc. No. 16-1, Exh. 8.)  The sentences were to be served consecutively, resulting in an aggregate term of eleven years to life.  *Id.*  Harvey was also sentenced to five years of mandatory post-release control and adjudicated a Tier III Sex Offender.  *Id.*

### B.    Direct Appeal

On April 7, 2010, Harvey, through counsel,[1] timely appealed to the Court of Appeals for the Fifth Appellate District ("state appellate court"), raising the following assignment of error:

> THE DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16, OF THE OHIO CONSTITUTION, IN THAT HE WAS FOUND GUILTY WHILE INCOMPETENT TO STAND TRIAL.

(Doc. No. 16-1, Exh. 10.)  On March 4, 2011 the state appellate court affirmed Harvey's conviction.  *State v. Harvey*, 2011 WL 883763 at * 1-2 (Ohio App. 5th Dist. March 4, 2011).  *See also* Doc. No. 16-1, Exh. 12.

On April 16, 2011, Harvey filed a *pro se* Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 16-1, Exh. 13.)  In his Memorandum in Support of Jurisdiction, Harvey raised the following sole proposition of law:

> The appellant was denied his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, and Article I, Section 16, of the Ohio Constitution, in that he was found guilty while incompetent to stand trial.

(Doc. No. 16-1, Exh. 14.)  On July 6, 2011, the appeal was dismissed as not involving any substantial constitutional question.  (Doc. No. 16-1, Exh. 16.)

### C.    Application to Reopen Appeal

On June 9, 2011, Harvey filed an Application for Reopening Pursuant to Ohio R. App. Pr. 26(B), in which he alleged ineffective assistance of appellate counsel as follows:

---

[1]  John Allen was Harvey's trial counsel while Charles M. Brown represented Harvey on direct appeal.

1.    The Defendant/Appellant has been denied his Sixth and Fourteenth
      Amendment rights to an effective appeal as of right from his criminal
      conviction where appellate counsel did not order all pretrial hearing
      transcripts to be reviewed for error; and where appellate counsel failed to
      provide the Defendant/Appellant the ability to make copies of the
      transcripts ordered for appeal, or make the Defendant/Appellant a copy of
      the transcripts to compensate for his global aphasia.

2.    The Defendant/Appellant was denied effective assistance of counsel
      during his only appeal as a right guaranteed by the Federal Constitution.

3.    Appellate counsel failed to raise a "Dead Bang Winner" on appeal where
      the Defendant/Appellant was denied his Federal Constitutional right to a
      jury trial, and that the trial counsel cannot waive the Defendant/Appellant
      Federal Right to a jury trial under the Fifth, Sixth, and Fourteenth
      Amendments to the Federal Constitution.

(Doc. No. 16-1, Exh. 17.)  The State filed a Response arguing (among other things) that Harvey's
26(B) Application should be denied as untimely.  (Doc. No. 16-1, Exh. 18.)  Harvey then filed a
Motion to Allow Untimely Filing of Application for Reopening, as well as a Motion for Leave to
File an Answer to the State's Response.  (Doc. No. 16-1, Exhs. 19, 20).  The State filed a Motion
to Dismiss in response.  (Doc. No. 16-1, Exh. 21.)

On August 18, 2011, the state appellate court denied Harvey's 26(B) Application as
untimely filed and, further, denied all pending motions as moot.  (Doc. No. 16-1, Exh. 22.)

On September 21, 2011, Harvey timely appealed the denial of his Application for
Reopening to the Ohio Supreme Court.  (Doc. No. 16-1, Exh. 23.)  In his Memorandum in
Support of Jurisdiction, Harvey set forth the following four propositions of law:

1.    The Appellant has been denied his Sixth and Fourteenth Amendment
      rights to an effective appeal as of right from his criminal conviction where
      appellate counsel did not order all pretrial hearing transcripts to be
      reviewed for error; and where appellate counsel failed to provide the
      Appellant the ability to make copies of the transcripts ordered for appeal,
      or make Appellant a copy of the transcripts to compensate for his global
      aphasia/Broca's Aphasia.

-7-

2.      The Appellant was denied effective assistance of counsel during his only appeal as a right guaranteed by the Federal Constitution.

3.      Appellate counsel failed to raise a "Dead Bang Winner" on appeal where the Appellant was denied his Federal Constitutional right to a jury trial, and that the trial counsel cannot waive the Appellant's Federal Right to a jury trial under the Fifth, Sixth, and Fourteenth Amendments to the Federal Constitution.

4.      The Appellant was denied Equal Protection and Due Process of the Fourteenth Amendment to the Federal Constitution to a complete appellate process of both direct review and collateral review of his criminal conviction where the Appellate Court determined that the late filing of his Appellate Rule 26(B) application was caused by the Appellant's actions. *State v. Winstead*, 74 Ohio St.3d 277, 658 N.E.2d 722, construed and applied.

(Doc. No. 16-1, Exh. 24.)  On November 30, 2011, the appeal was dismissed as not involving any

substantial constitutional question.  (Doc. No. 16-1, Exh. 26.)

**D.      Federal Habeas Petition**

On December 12, 2012, Harvey filed a Petition for Writ of Habeas Corpus and asserted

the following grounds for relief:

**GROUND ONE**: Petitioner was not competent to assist his trial attorney with the case (Direct Appeal from no contest plea.)

**SUPPORTING FACTS**: The Petitioner had a severe stroke now has Global/Broca's Aphasia and he cannot communicate.

**GROUND TWO**: Appellate counsel's failure to order a complete set of transcripts and make all the transcripts available to the Petitioner [Ohio Appellate Rule 26(B) "First Claim of Error"]

**SUPPORTING FACTS:** Petitioner has Broca's Aphasia and cannot communicate. The transcripts are the only way to provide a record of what did and did not happen.  For example: the State provided the Petitioner with a copy of the 2/8/2010 plea hearing which produced the claims in questions 8-9.

**GROUND THREE**: Ohio Appellate Rule 26(B): Claims B & C Petitioner was denied effective assistance of counsel during his only appeal as of right

-8-

guaranteed by the Federal Constitution.

    **SUPPORTING FACTS**: Appellate counsel failed to raise that the
Petitioner was (1) denied the right to a jury trial and that trial counsel waived the
Petitioner's jury trial where trial counsel cannot waive the Petitioner's right to a
jury trial. (2) The Trial Court misinformed the Petitioner to the correct maximum
sentence in counts 2, 3, & 4 which violates the plea agreement under state law. (3)
Petitioner's sentence in Count 1 of five (5) to life cannot occur for a violation of
O.R.C. § 2907.05(A)(4).

(Doc. No. 3.)  On August 2, 2013, Warden Samuel Tambi ("Respondent") filed his

Answer/Return of Writ.[2]  (Doc. No. 16.)   Harvey, through counsel, filed a Traverse on March 10,

2014.  (Doc. No. 24.)

### III.  Review on the Merits

    This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

    An application for a writ of habeas corpus on behalf of a person in custody
    pursuant to the judgment of a State court shall not be granted with respect to any
    claim that was adjudicated on the merits in State court proceedings unless the
    adjudication of the claim–

---

[2]  On August 13, 2013, Harvey filed a Motion to Supplement the record with (1) certain
state court docket sheets attached to his motion; (2) the competency hearing exhibits;
and, (3) "any additional transcripts that may exist for the state court proceedings relative
to Mr. Harvey's case," including transcripts relating to his September 19, 2009
arraignment, September 29, 2009 pretrial hearing, and January 27, 2010 pretrial hearing.
(Doc. No. 17.)  The Court granted Harvey's motion on September 3, 2013.  (Doc. No.
19.) Respondent supplemented the record on November 22, 2013 with the competency
hearing exhibits; however, he did not include copies of the identified arraignment or
pretrial hearing transcripts.  (Doc. Nos. 21, 22.)  Respondent subsequently advised the
Court that the September 2009 and January 2010 pretrial hearings were not recorded and,
therefore, no transcripts were available.  Respondent further advised the September 2009
arraignment was recorded, but had never been transcribed.  The Court determines the
transcript of this proceeding is not necessary for resolution of the issues raised in the
Petition.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).  Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 132 S.Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. 766, 778-779 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly

-10-

established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### A. Effect of No Contest Plea

Respondent argues Harvey's no contest plea constitutes a waiver of all his federal habeas claims "constitutional or otherwise, that occurred prior to his plea." (Doc. No. 16 at 11.)

-11-

Respondent maintains that, as a matter of law, the only habeas claim preserved after the entry of a no contest plea is the issue of whether the plea was knowing and voluntary.  Because Harvey does not raise a habeas claim pertaining to the knowing or voluntary character of his plea, Respondent asserts the entire Petition should be dismissed.

Harvey argues that "[f]ederal courts . . .unequivocally recognize a habeas petitioner's right to collaterally challenge a guilty plea when evidence casts real doubts as to the petitioner's competence to enter that plea."  (Doc. No. 24 at 26.)  He maintains his habeas claim that he was not competent to stand trial "inextricably incorporates" the argument that he was unable to knowingly and voluntarily enter a plea.  *Id*. at 27.  Moreover, Harvey asserts his no contest plea expressly preserved his right to file a direct appeal challenging the state court's competency determination.  *Id*. at 26.  He further argues that he did, in fact, raise this issue on direct appeal and notes the state appellate court fully considered the issue on the merits.  *Id.* at 27.  Accordingly, Harvey asserts he has not waived his right to challenge his competency claim in these habeas proceedings.

As the Sixth Circuit recently reiterated, "a voluntary and unconditional guilty plea [generally] 'bars any subsequent non-jurisdictional attack on the conviction.'"  *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) (quoting *United States v. Corp*, 668 F.3d 379, 384 (6th Cir.2012)).  The Supreme Court has explained this is so because:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).  The Supreme

Court has reiterated this principle on several occasions.  *See, e.g., United States v. Broce*, 488

U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) ("[W]hen the judgment of conviction upon

a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is

ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Mabry v.

Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) *overruled in part on other

grounds by Puckett v. U.S.*, 556 U.S. 129, 138 fn 1, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009)

(citing *Tollett* and other cases) ("It is well settled that a voluntary and intelligent plea of guilty

made by an accused person, who has been advised by competent counsel, may not be collaterally

attacked.").  Thus, "after the entry of an unconditional guilty plea, the defendant may challenge

only the court's jurisdiction and the voluntary and intelligent character of the plea itself."  *Werth*,

692 F.3d at 495.  *See also United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012).   A plea

of no contest stands on equal footing with a guilty plea.  *See North Carolina v. Alford*, 400 U.S.

25, 35 (1970); *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982).

Harvey pled no contest to all the charges in the indictment.  The Court notes, however,

that the above case law discusses waiver in the context of a "voluntary and  *unconditional*" plea.

*Werth*, 692 F.3d at 495 (emphasis added).  Here, Harvey preserved his right to file a direct appeal

to challenge the trial court's competency determination.  Indeed, during the change of plea

hearing, the trial court noted that "I understand that the defendant is going to admit that he did

these crimes, but he wants to appeal his competency finding contending that he is immune from

prosecution because of his stroke produced speech problems that makes it difficult for his

attorney to communicate with him."  (Doc. No. 16-1, Exh. 28 at 492.)  The Court further notes

that, under Ohio law, the entry of a no contest plea does not waive a criminal defendant's right to

-13-

appeal a trial court's ruling on a pretrial motion.  *See* Ohio Crim. R. 12(I) (providing that "[t]he plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion"); *State v. Luna*, 2 Ohio St.3d 57 (1982).

In *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), the Supreme Court carved out an exception to *Tollett*'s general rule that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to pretrial proceedings. In that case, the defendant pled guilty in state court to the charge of attempted possession of dangerous drugs after the trial court denied his motion to suppress evidence seized at the time of his arrest.  *Id.* at 284.  At the sentencing hearing, defendant indicated his intention to appeal both his conviction and the denial of his motion to suppress.  *Id.* at 285.  Appeal of the trial court's denial of his suppression motion was authorized by New York Code Crim. Proc. § 813-c, which provided that an order denying a motion to suppress evidence obtained as a result of unlawful search and seizure "may be reviewed on appeal from a judgment of conviction notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty." *Id.*

After his state court appeals were unsuccessful, defendant filed a petition for writ of habeas court in federal court.  The district court granted the petition, and the Second Circuit affirmed.  On appeal, the Supreme Court held that "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *Id.* at 293.

Here, Ohio law provides that a defendant who pleads no contest to a criminal charge may nonetheless challenge on appeal a trial court's ruling on a pretrial motion.  This law is embodied

-14-

not only in Ohio's Criminal Rule of Procedure 12(I), but also in the Supreme Court of Ohio's

recognition and enforcement of this Rule in *State v. Luna*, 2 Ohio St.3d 57 (1982) (holding that,

pursuant to Ohio Crim. R. 12(I), a plea of no contest pursuant to a negotiated plea agreement does

not waive a defendant's right to appeal a trial court's ruling on a pretrial motion).  Moreover, the

trial court specifically indicated at the plea and sentencing hearing that Harvey had indicated an

intent to appeal the trial court's denial of his motions to suppress.  The State did not object.

Finally, Harvey raised his competency claim on direct appeal and it was thoroughly considered by

the state appellate court.  *See State v. Harvey*, 2011 WL 883763 (Ohio App. 5th Dist. March 4,

2011). [3]

Respondent argues that "[w]hile the plea did preserve [Harvey's] ability to file a direct

appeal on the subject in the state courts, there is no case law to support the argument that he can

carry that claim forward in a federal habeas proceeding." (Doc. No. 16 at 12-13.)  However, the

Court notes that, under similar circumstances, federal courts within this Circuit have considered

the merits of habeas claims unrelated to the voluntary or intelligent character of a guilty or no

contest plea, including cases involving habeas claims challenging a state court's determination

regarding a petitioner's competency to stand trial.  *See e.g. Getter v. Smith,* 2014 WL 320020

(E.D. Mich. Jan. 29, 2014); *Hillman v. Beightler*, 2010 WL 2232640 (N.D. Ohio April 19, 2010);

*McCune v. Ludwick*, 2011 WL 52605 at * 3 (E.D. Mich Jan. 7, 2011).

Accordingly, the Court finds Harvey's no contest plea did not waive the claims presented

---

[3] The Court notes that other state appellate courts have similarly considered the merits of
competency to stand trial claims where a criminal defendant has entered a guilty or no
contest plea.  *See e.g. State v. Bullocks*, 2010 WL 2373264 (Ohio App. 12th Dist. June 14,
2010); *State v. Kovacek*, 2001 WL 577664 (Ohio App. 9th Dist. May 30, 2001).

in the instant habeas petition.[4]

### B. Ground One: Competency

In his first ground for relief, Harvey argues the state appellate court's determination that he was competent to stand trial "was contrary to, and involved an unreasonable application of, clearly established Federal law and unreasonably determined the facts in light of the evidence presented." (Doc. No. 24 at 7.)  Harvey first attacks at length the state courts' factual findings regarding the nature and severity of his aphasia, arguing they constitute unreasonable determinations of the facts in light of the evidence pursuant to 28 U.S.C. § 2254(d)(2).  He then argues the state courts' competency determination was contrary to, and involved an unreasonable application of, clearly established federal law pursuant to § 2254(d)(1) because he "offered proof in the proceedings below to satisfy at least a preponderance standard of evidence that he was incompetent to stand trial" and, thus, "overcame the presumption of competence" as a matter of law." (Doc. No. 24 at 23.)

Respondent argues, summarily, that "[t]he state court of appeals correctly and reasonably applied the law" and "[t]herefore, the state court's correct and reasonable adjudication of his competency claim must not be disturbed." (Doc. No. 16 at 18.)

The United States Supreme Court has long recognized that the conviction of an incompetent defendant violates due process.  *See Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Drope v. Missouri*, 420 U.S. 162, 172-73 (1975); *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966).

---

[4] Harvey's second and third grounds for relief relate to ineffective assistance of appellate counsel.  These claims, by their very nature, arose after the entry of Harvey's plea and the conclusion of his trial court proceedings.  Respondent cites no case law suggesting such claims would be waived by Harvey's no contest plea.

-16-

The standard governing competency was first set out in *Dusky v. United States*, 362 U.S. 402, 402 (1960) as follows: "[T]he test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *See also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) (citing *Godinez v. Moran*, 509 U.S. 389, 396 (1993)).

As the Sixth Circuit recently explained, habeas courts must accord considerable deference to a state court determination of competency:

> A state-court determination of competence is a factual finding, to which deference must be paid. *Thompson v. Keohane*, 516 U.S. 99, 108–11, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). "[R]egardless of whether we would reach a different conclusion were we reviewing the case *de novo*, the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (applying 28 U.S.C. § 2254(e)(1)); *see also Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010) (stating that as for 28 U.S.C. § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). And that deference must be paid even to state-court factual findings made on appeal. *See Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). "Further, the Supreme Court has very recently made abundantly clear that the review granted by AEDPA is even more constricted than AEDPA's plain language already suggests." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). "[S]o long as fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under AEDPA. *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted).

*Franklin*, 695 F.3d at 447-448. *See also Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006); *Woodley v. Brandshaw*, 2011 WL 6355204 at * 8 (6th Cir. Dec. 20, 2011); *Lennox v. Goodrich*, 2013 WL 5874746 at * 4 (N.D. Ohio Oct. 30, 2013); *Fitzpatrick v. Bradshaw*, 2008 WL 7055605 at * 17 (S.D. Ohio Oct. 14, 2008).

-17-

Moreover, as a general matter, the Supreme Court has made clear that a state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Id*. And, as Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting Wood, 558 U.S. at 301). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington,* 131 S.Ct. at 785 (internal quotation marks omitted). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87. This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id*. at 786.

Nevertheless, the Supreme Court has recognized that AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* at 786. "[E]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrel*, 537 U.S. 322, 340 (2003). Rather, "under AEDPA standards, a federal court can

-18-

disagree with a state court's factual determination and 'conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.'" *Baird v. Davis*, 388 F.3d 1110, 1123 (7th Cir. 2004) (quoting *Miller-El*, 537 U.S. at 340) (Posner, J.).

In the instant case, the state appellate court affirmed the trial court's determination that Harvey was competent, finding as follows:

> In his sole assignment of error, Appellant argues that the trial court erred in refusing to find him incompetent to stand trial. We disagree.
>
> {¶ 19} A defendant is presumed competent to stand trial.  R .C. 2945.37(G).  If the issue of a defendant's competency is raised, the defendant must prove by a preponderance of the evidence that he is incompetent.  *See State v. Pruitt* (1984), 18 Ohio App.3d 50, 480 N.E.2d 499.  In order to find a defendant incompetent, the court must find that based on the defendant's present mental condition, he (1) is incapable of understanding the nature and objective of the proceedings against him; and (2) he is unable to assist in his own defense.  R.C. 2945.37(G).
>
> {¶ 20} A court is prohibited from finding a defendant incompetent because he is: (1) receiving or has received treatment as a voluntary or involuntary mentally ill or mentally retarded patient; or (2) receiving or has received psychotropic drugs or other medication, even if the defendant might become incompetent to stand trial without the drugs or medication.  R.C. 2945.37(F).
>
> {¶ 21} At any time prior to trial, either the prosecution or defense may raise the issue of the defendant's competence to stand trial.  R.C. 2945.37(B).  If the issue of competency is raised prior to trial, it is mandatory for the court to hold a hearing on the issue.  *See* R.C. 2945.37(B); *State v. Were* (2002), 94 Ohio St.3d 173, 761 N.E.2d 591, 2002–Ohio–481.
>
> {¶ 22} A hearing on competency is to be heard within thirty (30) days after the issue is raised, unless the defendant has been referred for evaluation.  *See* R.C. 2945.37(C).  If the defendant has been referred for evaluation, the hearing shall be held within ten days after the filing of the report of the evaluation.
>
> {¶ 23} Both the prosecution and defense counsel are permitted to submit evidence on the issue of defendant's competence.
>
> {¶ 24} A written report of the evaluation of the defendant may be admitted by stipulation.  If the parties do not stipulate to the evaluation or object to the admissibility of it, the report may still be admitted unless a "substantial injustice"

-19-

will be done to the opposing party. *See* R.C. 2317.36. The party seeking to admit the report must give advance notice to the opposing party and afford him a reasonable opportunity to inspect and copy any records or other documents in the offering party's possession or control on which the report or findings were based. R.C. 2317.38.

{¶ 25} The examiner must file a written report with the court within 30 days after entry of a court order for evaluation and the court is required to provide copies of the report to the prosecutor and defense counsel. R.C. 2945.371(G).

{¶ 26} The report must include the following information: (1) the examiner's findings; (2) the facts in reasonable detail on which the findings are based; (3) if the examination was held to determine the defendant's competence to stand trial, all of the following findings that are applicable: (a) whether the defendant is capable of understanding the nature and objective of the proceedings against him or of assisting in his defense; (b) if the examiner's opinion is that the defendant is incapable of understanding the nature and objective of the proceedings against him or of assisting in his defense, whether he presently is mentally ill or mentally retarded and, if the examiner's opinion is that he is mentally retarded, whether the defendant appears to be a mentally retarded person subject to institutionalization by court order; (c) if the examiner determines that the defendant is incapable of assisting in his defense or cannot understand the nature and circumstances of the crime, whether the defendant can become capable of understanding such matters within one year if he is provided with a course of treatment; (d) if the examiner determines that the defendant is incapable of assisting in his defense or cannot understand the nature and circumstances of the crime, the examiner's recommendation as to the least restrictive treatment alternative, consistent with the defendant's treatment needs for restoration to competency and with the safety of the community. R.C. 2945.371(G).

{¶ 27} If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code. R.C. 2945.37(G). A trial court's decision will not be overturned absent an abuse of discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54.

{¶ 28} The trial court may consider an expert's credentials when determining the expert's credibility. *State v. Stanley* (1997), 121 Ohio App.3d 673, 700 N.E.2d 881. The court may also rely upon its own observations of the defendant, provided that the trial court has other competent credible evidence upon which to rely. *Id*. at 694, 700 N.E.2d 881. In this matter, there was evidence to support the

trial court's observation of the defendant's competency.

{¶ 29} In reviewing the present case, this Court must determine first, if Appellant is capable of understanding the nature of the proceedings against him, and second, if he is able to assist in his own defense.

{¶ 30} The court made the following determinations of facts in its journal entry:

{¶ 31} "1.  Defendant is a 75 year old man accused of molesting his daughters and granddaughters over many years.  He is charged in this case with four counts of gross sexual imposition, the most recent allegations being an offense against his step-granddaughter on May 24, 2009.

{¶ 32} "2.  On June 5, 2008, defendant had a stroke resulting in right-sided weakness and aphasia with poor naming and repetition abilities.  Initially he could not speak at all.  Although he has quickly recovered his mobility, he still has significant difficulty in speaking and writing.

{¶ 33} "3.  James Karpawich, Ph.D., a clinical psychologist, who evaluated Mr. Harvey's competency at the District 5 Forensic Center, found great difficulty in communicating with Mr. Harvey, saying he couldn't tell from Mr. Harvey's responses whether he always understood his questions.  He also noted the defendant had difficulty with the resulting limited verbal ability from his stroke in defining basic legal terms.  He consequently opined that the defendant was unable to assist his attorney at trial and [was] incompetent to be tried.  The court, based on the other evidence at [trial], finds that opinion not to be credible.

{¶ 34} "4.  A few days after his stroke, the defendant began physical therapy and speech therapy.  He is now able to exercise his own daily living skills and to assist his elderly wife (who is blind) with her needs.

{¶ 35} "5.  Mr. Harvey lives a substantially normal life for a man of his age.  He prepares the meals and does some of the housekeeping.  He dispenses the medications he and his wife are taking and places them in their daily pill boxes.  He writes down the sugar readings from a test instrument used daily for his wife.  He travels by car alone to his own doctor and probation appointments and to haircuts and other errands.  He drives his wife to her doctor appointments.  He drives to the pharmacy to pick up their prescriptions.

{¶ 36} "6.  He makes a grocery shopping list by copying names from empty containers to be checked over by his daughter.  He drives to the store himself for the easy shopping like milk and bread and pays by credit card.

{¶ 37} "7.  He takes his wife out for drives and out to eat at restaurants.

-21-

{¶ 38} "8.  Mr. Harvey enjoys watching television and is a sports fan who responds appropriately to televised sporting contests and other televised events.

{¶ 39} "9.  During the hearing, Mr. Harvey was heard to say to his attorney, John Allen, "John, I need the bathroom" showing that he remembers his attorney's name and can communicate with him.

{¶ 40} "10.  Mr. Harvey has a file folder in which he places legal papers for his criminal case.  He was able to fill out part of his pretrial supervision paperwork himself on September 11, 2009.

{¶ 41} "11. Dan Myers, defendant's pretrial supervision officer, has made more than eight home visits to Mr. Harvey's home and has always been able to communicate with him.  Mr. Harvey always appears to understand Mr. Myers but sometimes has difficulty putting his words together in his response.  Mr. Harvey sometimes asks his wife to help with a name or word and often uses nonverbal communication like pointing.  Mr. Harvey was able to explain to Mr. Myers the relationship of him to people pictured in a photo gallery in Mr. Harvey's hall and to tell him about his prior military service.

{¶ 42} "12. The recorded interview of Mr. Harvey by Sgt. Jeff McBride on May 27, 2009 about his crimes, placed in evidence, lasted more than a half hour.  That interview shows Mr. Harvey does understand the questions he was asked and responds appropriately but very often has difficulty in finding the words he is searching for.  His longest responses are short phrases like "It's not good," "I know that" and "My granddaughter."  This interview by Sgt. McBride shows that Mr. Harvey appreciates the seriousness of the charges and that he denies many of the allegations made by Sgt. McBride."

{¶ 43} Based on the trial court's finding, as well as our thorough review of the record, we find that Appellant failed to prove by a preponderance of the evidence that he was incompetent to stand trial.  Appellant was able to understand the nature and objective of the proceedings, he was cooperative with his attorney, and always showed up to his probation appointments on Mondays.

{¶ 44} We agree with the trial court that difficulty in communicating is not an incapability to assist a defense.  We find the trial court's conclusion that "it is reasonable that—if Mr. Harvey can be trusted to drive to his own doctor appointments and communicate with his doctor about his health—he can be trusted to communicate with his attorney whom he trusts."

{¶ 45} The most recent allegations against Appellant occurred over a year after his stroke.  A difficulty in verbally communicating with others does not negate the fact that he can be criminally liable for his acts nor does it prove that he is

-22-

incompetent to stand trial.

{¶ 46} The trial court made allowances for Appellant to have extra time to conference with his attorney when necessary during the hearing to communicate. The court also permitted a family member to assist in those conferences if any translation was needed.  The court said that these conferences could happen as often as necessary during the trial.

{¶ 47} After the court issued its ruling, Appellant entered a plea of no contest, and the transcript of those proceedings further indicate that Appellant was able to understand the nature and consequences of the proceedings.  Throughout the hearing, Appellant responded appropriately each time the trial court asked him a question.  The court repeatedly inquired about whether Appellant understood particular legal rights and concepts.  The court noted "everything is not just yes with him," meaning that Appellant responded appropriately to questions.

{¶ 48} All of these factors indicate that the trial court did not abuse its discretion in finding Appellant competent to stand trial.

{¶ 49} Appellant's assignment of error is overruled.

*State v. Harvey*, 2011 WL 883763 at * 2-6.

Harvey offers a multitude of reasons to support his argument that the state appellate court's competency determination constituted an unreasonable determination of the facts in light of the evidence presented.  He first argues the state appellate court "failed to address, let alone analyze, the severity of [his] aphasia and ongoing deficits he suffers in his expressive and receptive communication skills."  (Doc. No. 24 at 13.)  In support of this argument, Harvey directs the Court's attention to (1) medical evidence indicating that he had "severe receptive language deficits" directly after his stroke; and, (2) the results of Dr. Karpawich's psychological testing indicating Harvey's severe impairment in verbal fluency.  He also notes Dr. Karpawich's findings that Harvey was unable to answer any open-ended questions during the clinical interview and could only respond in three to four words sentences.  Harvey emphasizes the State's failure to introduce any medical evidence to address his documented severe language deficits, and argues

-23-

the state appellate court unreasonably determined the facts when it failed to fully appreciate the nature and severity of his condition.

In a similar vein, Harvey maintains the state appellate court unreasonably relied on evidence relating to his motor skills in support of its competency finding.  He argues that, while his stroke may not have impacted his ability to drive and take care of his and his wife's basic needs, it significantly effected both his receptive and expressive communication skills.  He notes Dr. Karpawich's testimony that the inability to communicate due to global aphasia "is not inconsistent with the ability to use motor skills, as strokes can impair certain cognitive functions and leave other functions intact." (Doc. No. 24 at 14.)  Maintaining that "motor skills are not synonymous with communication skills," Harvey argues "it was thus objectively unreasonable for the [the state appellate court] to measure Harvey's inability to expressively and receptively communicate against his ability to perform motor skills."  *Id.*

Harvey raises a litany of other objections to the state appellate court's competency determination as well.  He  takes issue with the state appellate court's reliance on his "four word sentence" to his attorney that he needed to use the bathroom and his use of a file folder to organize his legal materials, arguing his ability to express a "basic hygiene need" and "put folders in a file" has no bearing on his competence to stand trial.  He maintains the state court's finding that he was able to fill out part of his pretrial supervision paperwork "is simply not supported by the record," noting he only completed his name, address, and eye color and was unable to complete any other portion of the form.  Harvey asserts it was unreasonable for the state appellate court to rely on the testimony of pretrial supervision officer Dan Myers regarding his ability to communicate effectively with Harvey, emphasizing Myers is not a medical professional or speech

-24-

therapist.  Harvey also accuses the state court of "grossly overstating" Myers' testimony as to

Harvey's communication abilities.  Finally, Harvey maintains the state appellate court made

"numerous unreasonable findings of fact" relative to Sergeant McBride's recorded interview on

May 27, 2009, arguing this interview makes it "devastatingly clear Harvey cannot put words to

his thoughts in a meaningful, consistent manner."  (Doc. No. 24 at 20.)

Upon careful and thorough review of the state court record, the Court finds Harvey has

failed to overcome the presumption of correctness that this Court must afford the state appellate

court's competency determination.[5]  In affirming the trial court's competency determination, the

state appellate court found Harvey was capable of understanding the nature of the proceedings

against him.  Harvey has failed to supply "clear and convincing evidence" sufficient to justify a

finding that this determination was unreasonable.  Both Dan Myers and Sergeant McBride

testified at the competency hearing that they believed Harvey understood what was being

communicated to him.  (Doc. No. 16-1, Exh. 27 at 374, 376, 379, 450, 453).  Indeed, Mr. Myers,

who visited Harvey at his home on numerous occasions, testified as follows:

> Q:    Ever have any concern over [Harvey's] ability to function one on one with
>       you or have any concern at all that he was not understanding what his
>       obligations were with respect to the pretrial supervision program?
>
> A:    It's always been my opinion that he understands the questions that I'm
>       asking him, and what I'm saying to him.  He just has trouble responding
>       and putting words together to express to me his answers.  Most of the time

---

[5]  Although the state appellate court did not specifically cite Supreme Court precedent in
rejecting Harvey's competency claim, it cited *State v. Were*, 94 Ohio St.3d 173 (2002),
which expressly references *Drope v. Missouri*, 420 U.S. 162 (2007) and *Dusky v. United
States*, 362 U.S. 402 (1960).  Harvey does not argue the state appellate court failed to
consider his competency claim as a federal constitutional issue.  Accordingly, and in the
absence of any argument to the contrary, the Court will apply AEDPA deference in
reviewing the state appellate court's resolution of this claim.

he does well, he gets the job done.  Sometimes he asks his wife and she
will answer.

(Doc. No. 16-1, Exh. 27, at 379.)  Mr. Myers also testified Harvey "always understood my

questions" and indicated there had never been any point during the time he supervised Harvey

that he was "unable to reach an understanding" with Harvey.  *Id*. at 374, 376.

Similarly, Sergeant McBride testified Harvey did not appear confused during the

interview and was able to respond to questions about the specific allegations at issue.  (Doc. No.

16-1, Exh. 27, at 449-450.)  McBride noted Harvey did not always answer "yes" to everything

McBride asked, and gave several examples of instances where Harvey responded appropriately

to various questions and differentiated between "yes" and "no."  *Id.* at 450-451.  On several

occasions, McBride acknowledged he could not always understand Harvey and indicated Harvey

appeared frustrated because of his difficulty expressing himself.  *See e.g.* Doc. No. 16-1, Exh.

27,  at 447-449.   Despite this, however, McBride testified as follows:

> Q:    From your interview with Mr. Harvey, as well as the recording, is there
>        any doubt in your mind that Mr. Harvey understood what the nature of the
>        circumstances were when you were interviewing him?
>
> A:    There is no doubt in my mind.
>
> Q:    Is there any doubt in your mind that the answers that he gave were
>        relevant to the questions asked?
>
> A:    They were relevant, yes.

(Doc. No. 16-1, Exh. 27, at 453.)

Moreover, the state appellate court found the transcript of the change of plea hearing

indicated Harvey was able to understand the nature and consequences of the proceedings, noting

Harvey responded appropriately each time the trial court asked him a question.  Harvey argues

this conclusion is unreasonable because "Harvey gave one or two responses to most questions, stating yes more than half the time and responding non-verbally twice." (Doc. No. 24 at 22.) The Court disagrees. Upon careful review of the transcript of these proceedings, the Court finds the state appellate court did not unreasonably determine that Harvey's responses during the plea hearing were appropriate. Harvey did not answer yes to every question, and appropriately responded yes or no depending on the question. As the trial court observed, "he says no when I would expect him to say no, and yes, everything is not just yes with him." (Doc. No. 16-1, Exh. 28, at 501.)

Based on the above, and in light of its own review of the state court record, the Court finds Harvey has failed to show that the state appellate court unreasonably determined, in light of the evidence presented, that he was capable of understanding the nature of the proceedings against him.

The Court further finds the state appellate court did not unreasonably determine that Harvey was able to assist in his own defense. In affirming the trial court on this issue, the state appellate court concluded that "difficulty in communicating is not an incapability to assist a defense." *State v. Harvey*, 2011 WL 883763 at * 5. It agreed with the trial court that "if Harvey can be trusted to drive to his own doctor appointments and communicate with his doctor about his health– he can be trusted to communicate with his attorney whom he trusts." *Id*. The court also noted that the trial court made special allowances for Harvey to have extra time to confer with his attorney and permitted a family member to assist in those conferences as often as necessary. *Id*. at * 6.

While Harvey argues the state appellate court should have placed more weight on Dr.

Karpawich's opinion that he was not capable of assisting in his defense, he has not shown  the state court was unreasonable in rejecting Dr. Karpawich's conclusion.  Testimony was offered at the competency hearing that Harvey did, in fact, drive himself to doctor appointments and attend those appointments independently.  (Doc. No. 16-1, Exh. 27, at 350.)  Harvey does not contest this fact, but argues "there is no evidence in the record as to what specifically Harvey is alleged to have communicated to what doctor, how Harvey allegedly communicated with an unnamed doctor, or how the ability to relay any information to a physician, in whatever form, equates to a reasonable degree of rational understanding and a factual understanding about the proceedings against him." (Doc. No. 24 at 25.)   However, as noted *supra*, the state court's factual finding on this issue is presumed correct absent clear and convincing evidence to the contrary.  It is, thus, Harvey's burden to refute the state courts' factual finding that he was able to communicate effectively with his doctors.  Harvey has failed to direct this Court's attention to any evidence in the record contradicting the state court's finding that he was able to communicate independently and effectively with his physician.[6]  He has therefore, failed to demonstrate that the state appellate court unreasonably inferred that Harvey's ability to attend appointments and communicate independently with his doctor reflected an ability to communicate effectively with his attorney.

The Court also notes that, while Myers testified Harvey had difficulty communicating, he also stated he (Myers) was never unable to "reach an understanding" with Harvey.  (Doc. No. 16-1, Exh. 27, at 376.)  Myers further noted Harvey was able to communicate effectively with him

---

[6]The Court notes there was some testimony during the competency hearing suggesting Harvey misunderstood instructions from his doctor regarding the need for him to take eye drops after his cataract surgery.  (Doc. No. 16-1, Exh. 27 at 342-343.)  However, Harvey does not rely on this testimony as evidence that he was unable to communicate with his physician. Thus, the Court does not address it herein.

"most of the time" and that, when there had been a problem, his wife was able to answer for him.

*Id.* at 379.  Similarly, probation officer Lisa Snay testified Harvey reported "faithfully" every

Monday morning and described his ability to communicate as follows:

> A:     He just had difficulty putting his words in order, but I could understand
>        what he was saying to me.
>
> Q:     So, if I am his lawyer, and we're in court, do you think he can
>        communicate with me about what a witness is testifying to?
>
> A:     Yes.
>
> Q:     How would he communicate?
>
> A:     It would be chopped up, but he would be able to express what he is saying.

(Doc. No. 16-1, Exh. 27, at 394.)

In light of the above, the Court finds Harvey has failed to show that the state appellate court

unreasonably determined, in light of the evidence presented, that he was capable of assisting in

his own defense.  While the Court acknowledges there is evidence in the record to support a

different conclusion, "a state-court factual determination is not unreasonable merely because the

federal habeas court would have reached a different conclusion in the first instance."  *Wood v.*

*Allen*, 558 U.S. 290, 130 S.Ct. 841, 849 (2010).  On habeas review, this Court is required to

accord deference to a state-court factual finding and "'so long as fairminded jurists could

disagree on the correctness of the state court's decision,' relief is precluded under AEDPA."

*Franklin*, 695 F.3d at 448 (quoting *Harrington*, 311 S.Ct. at 786.)  Here, Harvey has failed to

overcome the presumption of correctness accorded to the state appellate court's competency

determination by clear and convincing evidence.  Moreover, in light of the demanding nature of

the standard of habeas review, and for all the reasons set forth above, this Court cannot say that

the state appellate court unreasonably determined the facts in light of the evidence pursuant to § 2254(d)(2) when it determined that Harvey was competent to stand trial.

The Court also rejects Harvey's argument that the state appellate court's competency decision was contrary to and involved an unreasonable application of clearly established federal law pursuant to § 2254(d)(1).  (Doc. No. 24 at 23-26.)  In support of this argument, Harvey maintains he overcame the presumption of competence in the state court proceedings because he offered proof to satisfy "at least a preponderance of the evidence" that he was incompetent to stand trial.  *Id.* at 23.  He asserts the state appellate court's reliance on his ability to perform motor skills or physical tasks "upended and completely contradicted clearly established federal law as to the type of evidence needed to demonstrate incompetence."  *Id.* at 24.  Moreover, Harvey argues the state appellate court's "unreasonable application of federal law cannot be saved by the suggestion that the trial court made allowances for Harvey to have extra time to conference with his attorney when necessary to communicate."  *Id.* at 25.

As noted *supra*, a decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  "[A] state-court decision is an unreasonable application of our clearly established precedent [under § 2254(d)(1)] if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  *White v. Woodall*, ---- S.Ct. -----, 2014 WL 1612424 at * 7 (April 23, 2014). As the Supreme Court recently explained, "[t]he critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly

-30-

established rule applies to a given set of facts that there could be no "fairminded disagreement" on the question." *Id.* at * 8 (quoting *Harrington*, 562 U.S., at —— (slip op., at 13)).

The state appellate court did not predicate its competency determination solely on Harvey's ability to perform motor skills and physical tasks. Rather, the court supported its competency determination on Harvey's ability to communicate effectively with his doctor; cooperativeness with his attorney; and, appropriate responses during the change of plea hearing. Harvey cites no Supreme Court precedent suggesting the state appellate court erred as a matter of law in relying on this type of evidence. Moreover, the competency hearing testimony of Dan Myers, Sergeant McBride, and Lisa Snay relates to Harvey's communication (as opposed to motor) skills. As recounted above in some detail, these witnesses testified they believed Harvey was able to understand what was being communicated to him. Myers and Snay also testified that, while he had difficulty "putting his words together," Harvey was generally able to communicate effectively. As Harvey has failed to direct this Court's attention to any Supreme Court precedent indicating the state appellate court's reliance on this evidence was "objectively unreasonable," the resulting competency determination was not contrary to, or involve an unreasonable application of, clearly established federal law pursuant to § 2254(d)(1).

Accordingly, and for all the reasons set forth above, the Court finds Harvey's First Ground for Relief is without merit.

### C. Grounds Two and Three: Ineffective Assistance of Appellate Counsel

In his Second and Third Grounds for Relief, Harvey raises various claims of ineffective assistance of appellate counsel. Ground Two asserts appellate counsel was deficient when he failed to obtain and review the entire record; failed to consult with Harvey; and, failed to provide

Harvey with copies of the transcripts before filing the direct appeal.  Harvey claims he was prejudiced by appellate counsel's deficient performance because counsel's failure to thoroughly review the record and consult with Harvey resulted in his subsequent failure to appeal the following two "meritorious constitutional issues:" (1) Harvey's denial of his Sixth Amendment right to a jury trial because his plea was not made knowingly, intelligently, and voluntarily; and, (2) the trial court's failure to advise Harvey of the correct maximum sentences for Counts Two, Three and Four invalidated his plea.  In addition to arguing that the failure to raise these issues demonstrates prejudice with regard to his ineffective assistance of counsel claim in Ground Two, Harvey also separately asserts in Ground Three that appellate counsel's failure to raise these two issues constitutes ineffective assistance of appellate counsel in its own right.  (Doc. No. 30.)

Respondent argues these claims are procedurally defaulted because Harvey raised them for the first time in his App. R. 26(B) Application, which was denied by the state appellate court as untimely.[7]  Respondent further maintains Harvey has failed to demonstrate either cause or prejudice to excuse the default and, therefore, these claims should not be addressed on the merits. (Doc. Nos. 16, 31.)  In the alternative, Respondent claims Grounds Two and Three are without substantive merit.  With regard to Ground Two, Respondent asserts "[i]t is apparent from the record that the state Court of Appeals had all the necessary transcripts" and, therefore,

_____

[7]  In *Maupin v. Smith,* 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

Harvey cannot show his appellate counsel's performance prejudiced him.  (Doc. No. 31 at 12.) With regard to Ground Three, Respondent argues the change of plea hearing transcript unequivocally demonstrates that Harvey knowingly, voluntarily and intelligently waived his right to a jury trial.  Respondent also argues this Court should not address Harvey's ineffective assistance claim based on the trial court's alleged failure to accurately inform him of the maximum sentences on Counts Two, Three and Four because it was not fairly presented to the state courts and is "demonstrably false."  (Doc. No. 31 at 15.)

Harvey argues Grounds Two and Three are not procedurally defaulted.  He maintains he submitted his App. R. 26(B) Application to the prison mail room in sufficient time to reach the state appellate court before the expiration of the 90-day filing deadline.  Harvey contends the fact that his Application was untimely was beyond his control and "due to an objective factor external to [him] that impeded his efforts to comply with the State's procedural rule."  (Doc. No. 24.) Relying on *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003),[8]  Harvey requests the Court find he has shown both cause and prejudice to excuse the default.

---

[8]  In *Maples*, the Sixth Circuit held that, "[w]here a *pro se* prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events," that circumstance "is sufficient to excuse a procedural default based upon a late filing."  *Maples*, 340 F.3d at 439.  In that case, a habeas petitioner called the prison mail room five days before the filing deadline to inquire about postage rates.  *Id*. at 435.  The prison mail room told him to call back two days later, which he did; the petitioner then delivered his application to the mail room either two or three days before the filing deadline, and the application arrived at the court one day late.  *Id*.  The Sixth Circuit found there was "no doubt that [the materials] would have been timely delivered" to the court if the prison "had accepted and mailed Maples's petition when he first attempted to deliver it—five days before the state's deadline[.]"  *Id*. at 439.  The court held that "[t]he prison officials' inaction ... present[ed] an objective factor external to the defense that impeded efforts to comply with the State's procedural rule," which was adequate cause for the procedural default.  *Id*. (internal quotations omitted).

-33-

In supplemental briefing submitted at the request of the Court, Respondent argues the instant case is distinguishable from *Maples* because (1) it is not certain Harvey submitted his Application to the prison mail room in sufficient time for it to timely reach the state appellate court given the fact he delivered it to the mail room on the Friday before Memorial Day and only five days before the expiration of the filing deadline; and, (2) there is no evidence the delay in reaching the state court was the product of delay or inaction on the part of prison officials.  Thus, Respondent insists Grounds Two and Three are, in fact, procedurally defaulted and should not be addressed on the merits.  (Doc. No. 31 at 4-9.)

Although the parties devote substantial effort to arguing the issue of procedural default and the applicability of *Maples* to the facts of the instant case, the Court finds it unnecessary to address this issue.  As the United States Supreme Court has observed, federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *See Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003); *accord Swanigan v. Sherry*, 502 Fed. App'x 544, 546 (6th Cir. 2012).

Accordingly, the Court will proceed to address the merits of Harvey's Second and Third Grounds for Relief.

      **1.**      **Third Ground for Relief**

            **a.**      **Ineffective Assistance of Counsel for Failure to Raise Denial of Right to a Jury Trial**

In his Third Ground for Relief, Harvey first argues his appellate counsel was ineffective for failing to raise the argument that "Harvey's no contest plea did not comport with due process

-34-

requirements because it did not include a valid waiver of the right to jury trial." (Doc. No. 30 at 22.)  Specifically, Harvey maintains the plea transcript reveals he "did not enter his plea intelligently or knowingly because [he] clearly did not understand the constitutional rights he waived by entering a no contest plea." *Id*. at 23.  Harvey asserts appellate counsel failed to review the plea transcript; failed to consult with Harvey on this issue; and, as a result, failed to identify this issue as one "worthy of appellate review." *Id*. at 27.  He maintains appellate counsel's failure to challenge the knowing and voluntary character of his right to jury trial waiver during the plea hearing constitutes deficient performance.  Because the plea transcript "clearly indicates" he did not understand that he waiving his right to a jury trial, Harvey argues this is a "meritorious issue" and he was, therefore, prejudiced by counsel's failure to raise it on appeal.

Respondent asserts "it is evident on the record that Harvey's jury trial waiver was knowing and voluntary, as was his no contest plea." (Doc. No. 31 at 14.)  He recounts the trial court's plea colloquy with Harvey on this issue and Harvey's acknowledgment he understood he was waiving the right to a jury trial.  Respondent also emphasizes that "Harvey's trial attorney also took the extraordinary step of reading the written plea aloud in Court and had Harvey acknowledge that he understood what was in the document," including that as a result of the plea he would "give up his rights to a jury trial." (Doc. No. 31 at 14.)  Thus, Respondent argues that "[b]ecause raising this meritless claim on appeal would have been futile, appellate counsel could not have been deficient for weeding out the claim." *Id*.  Respondent further argues that, because this claim "is plainly not supported by the record," Harvey was not prejudiced by its omission from his direct appeal.

A defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The two-part test enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2002). Under that test, a habeas petitioner must first demonstrate that counsel's errors were "deficient;" i.e. so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687. To determine if counsel's performance was deficient pursuant to *Strickland*, a reviewing court must find that the representation fell "below an objective standard of reasonableness." *Id*. at 688. Second, the petitioner must show that he was prejudiced by counsel's errors. To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. If a petitioner fails to prove either deficiency or prejudice, his ineffective-assistance claim will fail. *See Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 697).

In the specific context of ineffective assistance of appellate counsel claims, the Supreme Court has explained that counsel must provide reasonable professional judgment in presenting an appeal. *See Evitts,* 469 U.S. at 396–97. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). The failure to raise "significant and obvious" issues on appeal can constitute ineffective assistance of appellate counsel. *Mapes v. Coyle*, 171

F.3d 408 (6th Cir. 1999).  However, "[no] decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. at 750–54; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (tactical choices are properly left to the sound professional judgment of counsel).  The failure of appellate counsel "to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal."  *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (citing *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001)).

Finally, as the Supreme Court recently explained, habeas courts must bear in mind that "[s]urmounting *Strickland*'s high bar is never an easy task."  *Harrington*, 131 S.Ct. at 788 (citations and internal quotation marks omitted).  "[T]he *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve."  *Id*.  Accordingly, "[j]udicial scrutiny of a counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight ...."  *Strickland*, 466 U.S. at 689.  Indeed, "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment,' " recognizing "the constitutionally protected independence of counsel and ... the wide latitude counsel must have in making tactical decisions."  *Cullen v. Pinholster*, ⸺ U.S. ⸺, ⸺, 131 S.Ct. 1388, 1406–07, 179 L.Ed.2d 557 (2011) (quoting *Strickland*, 466 U.S. at 689–90).

This claim was raised in Harvey's App. R. 26(B) Application.  (Doc. No. 16-1, Exh. 17.)

The state appellate court denied Harvey's Application on the grounds that it was untimely and Harvey had failed to show good cause for the late filing.  (Doc. No. 16-1, Exh. 22.)  Harvey timely appealed this ruling to the Ohio Supreme Court, raising appellate counsel's failure to challenge the jury trial waiver in his Memorandum in Support of Jurisdiction.  (Doc. No. 16-1, Exhs. 23, 24.)  The Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 16-1, Exh. 26.)  In light of this procedural history, Harvey asserts neither the state appellate court or the Ohio Supreme Court evaluated this claim on the merits and, therefore, this Court should conduct a *de novo* review.  (Doc. No. 30 at 2-3.) Respondent does not argue otherwise.  (Doc. No. 31.)

The deferential AEDPA standard of review only applies to claims that were "adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d).  Thus, if a state court "did not reach the merits of [a habeas] claim, federal habeas review is not subject to the deferential standard that applies under AEDPA.... Instead, the claim is reviewed *de novo*."  *Cone v. Bell*, 556 U.S. 449, 472 (2009).  The Court agrees that Harvey's ineffective assistance of appellate counsel claim was not addressed on the merits by the state courts and will, therefore, conduct a *de novo* review.  *See e.g. Waldron v. Jackson*, 348 F.Supp.2d 877, 888 (N.D. Ohio 2004); *Lopez v. Gansheimer*, 2012 WL 5052174 at * 5 (N.D. Ohio Sept. 21, 2012).

After the trial court determined Harvey was competent to stand trial, Harvey requested a hearing to withdraw his guilty plea and enter a plea of no contest to all charges in the indictment. (Doc. No. 16-1, Exh. 5.)  The trial court conducted a change of plea hearing on February 8, 2010. (Doc. No. 16-1, Exh. 28.)  During that hearing, the following colloquy occurred:

> THE COURT:          Any time you are accused of a crime like you have been
>                                    here, you have a number of crimes that you have been

accused of, you have a right to a trial of those crimes. At that trial the evidence would be presented, and the facts would be decided either by a jury, who would be sitting up here in this jury box, or me. Do you understand you can have a trial if you want one?

THE DEFENDANT: No, I can't.

MR. ALLEN: Let's get closer to the Judge.

THE DEFENDANT: I'm sorry.

THE COURT: That's all right. There are accusations made against you that you committed crimes, you understand that, right?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you can have those accusations, the evidence of those charges, tried to a jury or to a judge, do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. At a trial you would be presumed innocent, you wouldn't have to prove you didn't do it, do you understand that?

THE DEFENDANT: Yes.

THE COURT: And the prosecutor would have to prove that you did do what you are accused of, do you understand that?

THE DEFENDANT: Yes.

THE COURT: At trial you would have the right to make witnesses come to trial and testify, even if they didn't want to be here.

THE DEFENDANT: Yes.

THE COURT: That's because Mr. Allen can serve subpoenas on people, and you have the power to make witnesses come to trial to testify, do you understand that?

THE DEFENDANT: Oh, yes.

-39-

THE COURT:     All right. It doesn't apply to you, though.  If you don't want to testify at trial, no one can make you testify.

THE DEFENDANT: I know that.

THE COURT:     All right, good.  You also have the right to confront the witnesses who testify against you.  Here's what I mean by that, when the prosecutor's witnesses come to stand here to testify, you will be sitting right here in the courtroom with Mr. Allen in front of them.

THE DEFENDANT: Uh, huh.

THE COURT:     And then when they get done testifying, he will be able to ask them cross-examination questions, and if you have other things you want him to ask, you will be able to have those suggestions as well, do you understand that?

THE DEFENDANT: Yes.

THE COURT:     Now, if you plead no contest, Mr. Harvey, you will be admitting the facts of the charges that you are accused of, you will be admitting that you did those things.

THE DEFENDANT: Yes.

**THE COURT:     Based on your admission of those facts, I can find you guilty without a trial.**

**THE DEFENDANT: Yes.**

**THE COURT:     Do you understand that?**

**THE DEFENDANT: Yes.**

THE COURT:     But you still reserve the right to appeal your competency finding, and that's why Mr. Allen is doing this. So you still will be able to appeal my finding that you are competent, do you understand that?

THE DEFENDANT: Yes.

THE COURT:     Has anyone promised you anything to get you to plead no contest here today?

-40-

THE DEFENDANT:  No.

THE COURT:          Has anyone threatened you to get you to plead no contest?

THE DEFENDANT:  No.

(Doc. No. 16-1, Exh. 28 at 493-496) (emphasis added).

The trial court then asked Harvey's attorney, Mr. Allen, to read aloud a written summary of the rights that Harvey would be giving up by entering a no contest plea.  (Doc. No. 16-1, Exh. 28 at 497.)  The court instructed Harvey that "[i]f there is something he reads you can't understand, you hold up your hands and stop him so he can understand you are having trouble." *Id*. Harvey responded "okay." *Id*.  After reading portions of the summary that are not relevant herein, Mr. Allen had the following exchange with Harvey:

MR. ALLEN:          I understand by pleading guilty I give up my right–pleading no contest, I give up my right to a jury trial or court trial where I could see and have my attorney question witnesses against me, and where I could use the power of the Court to call witnesses to testify for me. I know at trial– did you want to say something?

THE DEFENDANT:  No, that's good.

MR. ALLEN:          I know at trial I would not have to take the witness stand and could not be forced to testify against myself and that no one could comment if I chose not to testify.  I understand that I waive my right to have the prosecutor give my no contest plea beyond a reasonable doubt. By pleading no contest I admit committing the offense. By pleading no contest I understand that the Court will decide my guilt based upon the statement by the prosecutor in the indictment or otherwise about the evidence with which I have been presented at trial on the offense for which I was charged.

* * *

Do you understand that?

-41-

THE DEFENDANT:  Yes.

(Doc. No. 16-1, Exh. 28 at 499-500.)  Harvey then signed the Admission of Guilty/Judgment

Entry form entering his no contest plea.  (Doc. No. 16-1, Exh. 28 at 500, and Exh. 7.)

Harvey's counsel then expressed his misgivings to the trial court about the above

colloquy:

> MR. ALLEN:              Your Honor, for the record, I have gone over this with him.
>                         I have explained these rights to him previous to this
>                         hearing.  I've asked him to explain to me what he meant by
>                         those rights, and he could not communicate that to me. So
>                         if he understands this by saying yes and no, and that's
>                         adequate for the Court, I'm satisfied, but I cannot get him
>                         to communicate his understanding of these rights that have
>                         been enumerated in this judgment entry.
>
> THE COURT:              And that's because he has difficulty speaking in long
>                         sentences, everyone says that. But, on the other hand, as
>                         I've observed, and you've observed, he responds very
>                         appropriately. He says no when I would expect him to say
>                         no, and yes, everything is not just yes with him. Also I
>                         understand him coming into the courtroom when the bailiff
>                         asked him to empty his pockets to go through the metal
>                         detector, he did that.  When he asked him to put his hands
>                         down, he did that.  He responds entirely appropriately.

(Doc. No. 16-1, Exh. 28, at 500-501.)  The court concluded the hearing by asking Harvey how he

pled to the four charges in the indictment.  *Id*. at 506.  Harvey responded "No– can't do the

word.  No conkes."  *Id*.  The court responded "that sounds pretty close to no contest," to which

Harvey replied "Yes, very good."  *Id.*  The court then accepted Harvey's no contest plea as

knowingly and voluntarily made.  *Id.*

As the Supreme Court has explained, "[s]everal federal constitutional rights are involved

in a waiver that takes place when a plea of guilty [or no contest] is entered in a state criminal

trial," including "the right to a trial by jury."  *Boykin v. Alabama*, 395 U.S. 238, 245 (1969).

Because the right to a jury trial is fundamental, a waiver of that right must be voluntary, knowing, and intelligent. *Otte v. Houk*, 654 F.3d 594, 600 (6th Cir. 2011). *See also Duncan v. Louisiana*, 391 U.S. 145, 149 (1968); *Brady v. United States*, 397 U.S. 742, 748 (1970); *Haliym v. Mitchell*, 492 F.3d 680, 698 (6th Cir. 2007). A determination of whether a waiver of the right to a jury trial meets this standard is made "after 'considering all of the relevant circumstances' surrounding the . . . waiver." *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013) (quoting *Brady*, 397 U.S. at 749). *See also Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942) ("Whether or not there is an intelligent, competent, self-protecting waiver of a jury trial by an accused must depend upon the unique circumstances of each case"). A petitioner bears the burden of proving that his waiver of a jury trial was not knowing, voluntary, or intelligent. *See Haliym*, 492 F.3d at 698; *Otte*, 654 F.3d at 600; *Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2004). "[T]he dispositive inquiry is whether the defendant understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *Jells v. Mitchell*, 538 F.3d 478, 510 (6th Cir. 2008). *See also Adams*, 317 U.S. at 278; *Fitzpatrick,* 723 F.3d at 641; *Otte*, 654 F.3d at 601.

Moreover, although the Supreme Court has held that the competency standard for standing trial is the same as that for pleading guilty or no contest, "[a] finding that a defendant is competent to stand trial . . is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel." *Godinez v. Moran*, 509 U.S. 389, 400 (1993). This is because "[i]n addition to determining that a defendant who pleads guilty . . . is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." *Id*. The

-43-

Supreme Court explained this distinction as follows:

> The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings.  *See Drope v. Missouri, supra*, 420 U.S., at 171, 95 S.Ct., at 903 (defendant is incompetent if he "lacks the capacity to understand the nature and object of the proceedings against him") (emphasis added).  The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced.  *See Faretta v. California, supra*, 422 U.S., at 835, 95 S.Ct., at 2541 (defendant waiving counsel must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open' ") (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)); *Boykin v. Alabama*, 395 U.S., at 244, 89 S.Ct., at 1712 (defendant pleading guilty must have "a full understanding of what the plea connotes and of its consequence").

*Id*. at 401, fn 12 (emphasis in original).

Upon careful review of the record, the Court finds appellate counsel was not ineffective for failing to raise on direct appeal the issue of whether Harvey knowingly and voluntarily waived his right to a jury trial.  In determining that Harvey was competent to stand trial, the state trial and appellate court found he was capable of understanding the legal proceedings against him.  This Court has already determined, *supra*, that this finding was neither an unreasonable determination of the facts in light of the evidence presented, or contrary to or an unreasonable application of clearly established federal law.  Thus, the issue here is not whether Harvey was incapable of understanding the legal concepts conveyed to him during the plea hearing.  Rather, the issue presented in this ground for relief is whether appellate counsel was ineffective for failing to raise the additional argument that Harvey failed to actually understand the "significance and consequence of" waiving his right to a jury trial.

Based on the plea colloquy set forth above, the Court finds appellate counsel was not

-44-

deficient for failing to raise this argument. The trial court clearly and carefully explained to Harvey the rights he would be giving up by pleading no contest, including the ramifications of waiving his right to a jury trial. In so doing, the trial court frequently paused to ask Harvey if he understood and Harvey consistently indicated that he did, in fact, understand. In an abundance of caution, the trial court took the additional step of having defense counsel read aloud the terms of the no contest plea, included the waiver of his right to a jury trial. When defense counsel specifically stopped and asked Harvey if he wanted to say something regarding his jury trial waiver, Harvey responded "No, that's good." (Doc. No. 16-1, Exh. 28 at 499.)

In light of the above, the Court finds appellate counsel's failure to raise the knowing and voluntary character of Harvey's plea did not fall below an objective standard of reasonableness. The Court cannot say it was unreasonable for appellate counsel to determine that Harvey's competency was the primary and fundamental issue on appeal. As noted *supra*, appellate counsel is permitted to make strategic decisions by "winnowing out weaker arguments . . . and focusing on those more likely to prevail." *Smith*, 477 U.S. at 536 (internal quotations omitted). Appellate counsel could reasonably have determined that Harvey's competency was the key issue on appeal and that, absent a reversal on that point, there was little chance of success on the issue of the knowing and voluntary character of his plea.

Harvey argues appellate counsel's failure to raise this issue was not strategic, but the result of his failure to review the change of plea transcript and consult with Harvey prior to filing the direct appeal. As an initial matter, the Court rejects Harvey's argument that appellate counsel necessarily failed to review the change of plea transcript because he did not order it for direct appeal or cite to it in his appellate brief. Neither of these circumstances result in the inexorable

conclusion that appellate counsel failed to thoroughly review the record. It is just as possible that appellate counsel reviewed the change of plea transcript and decided, based on the lengthy plea colloquy set forth therein, that it would not be productive to raise the issue of the knowing and voluntary character of Harvey's plea, but to focus on Harvey's competency instead. Having made this strategic choice, it would not be surprising that appellate counsel failed to order the transcript for appeal or cite to it in his brief.

With regard to appellate counsel's alleged failure to consult with Harvey, the Court notes appellate counsel wrote to Harvey on April 8, 2010. (Doc. No. 16-1, Exh. 17, at 181.) In that letter, Harvey was informed of counsel's appointment and told that the issue of Harvey's competence would be raised on appeal. *Id.* Three days later, on April 11, 2010, Harvey (apparently with the assistance of another inmate)[9] wrote a letter to appellate counsel, in which he specifically asked "what happened to my jury trial?" (Doc. No. 16-1, Exh. 17, at 182.) Counsel subsequently filed Harvey's appellate brief on June 21, 2010, raising only the issue of Harvey's competence to stand trial. (Doc. No. 16-1, Exh. 10.) While it certainly would have been better practice for appellate counsel to meet directly with Harvey, the Court cannot say that appellate counsel's failure to do so constituted ineffectiveness as asserted. Appellate counsel could reasonably have determined that this issue was not a viable claim for appeal. Thus, the Court

---

[9] The April 11, 2010 letter contains Harvey's signature and is written in the first person. However, given Harvey's allegations herein that he is unable to communicate effectively either orally or in writing, it appears highly unlikely that this letter was written by Harvey himself. The letter contains four paragraphs and is written in complete, coherent sentences that express relatively complex ideas and requests. Indeed, in his Supplemental Briefing, Harvey's habeas counsel appears to concede this point, characterizing the letters as being written by Harvey "or a fellow inmate writing for him." (Doc. No. 30 at 13.)

cannot say that appellate counsel's decision not to raise the issue of jury waiver on appeal was the product of his alleged failure to consult with Harvey, rather than a strategic decision.

Even on a *de novo* review, this Court must accord considerable deference to strategic decisions by appellate counsel, under the standard set forth in *Strickland*. *See Harrington*, 131 S.Ct. at 788; *Pinholster*, 131 S.Ct. at 1406-07. Applying this deference, and recognizing "the wide latitude counsel must have in making tactical decisions," *Pinholster*, 131 S.Ct. at 1406-07, the Court cannot say appellate counsel's failure to challenge the knowing and voluntary character of Harvey's jury trial waiver fell below an objective standard of reasonableness. Moreover, the Court finds Harvey has not demonstrated prejudice from appellate counsel's failure to raise this issue. In light of the lengthy plea colloquy set forth above, the Court finds Harvey has failed to demonstrate a reasonable probability that inclusion of this issue would have changed the result of the appeal.

Accordingly, this subpart of Harvey's Third Ground for Relief is without merit.

b. **Ineffective Assistance of Counsel for Failure to Raise the Claim that the Trial Court Misinformed him of the Correct Maximum Sentences on Counts Two, Three and Four**

Harvey next argues his appellate counsel was ineffective for failing to raise the argument that his no contest plea "did not comport with due process requirements because the trial court misinformed [him] of the applicable maximum sentences for Counts Two, Three and Four." (Doc. No. 30 at 31.) Harvey claims that, because these Counts involved conduct that occurred from 1993 to June 1996, the applicable law was the Ohio sentencing provisions in existence prior to July 1996. Under this older version of the law, Counts Two, Three and Four alleged third degree felonies which carried a definite sentence of 1, 1 ½, or 2 years imprisonment, with a

maximum of 2 years.  (Doc. Nos. 33, 33-1.)  The trial court, however, informed Harvey that he was subject to "a maximum sentence of two, two and a half, three, or four years up to ten years" for these Counts.  (Doc. No. 16-1, Exh. 28 at 504.)  Harvey argues the maximum sentences stated by the trial court relate only to third degree felonies that carry a physical harm specification.  Because there was no such specification in the indictment for Counts Two, Three, or Four, Harvey argues he was convicted and sentenced of an offense that was not included in the indictment, in violation of the Due Process Clause.  He also asserts his plea was not entered knowingly or voluntarily because it was based on a misstatement of the law regarding his possible maximum sentences.  Harvey maintains appellate counsel was deficient for failing to raise this argument on appeal and, further, that "such failure prejudiced [him] as his plea was not subject to any level of appellate review and he continues to serve consecutive mandatory two year sentences for Counts Two, Three and Four, warranting habeas relief." (Doc. No. 30 at 37.)

Respondent argues this claim was not "properly presented" to the state courts because Harvey failed to include it in his 26(B) Application and, instead, included it in his Motion for Leave to File a Reply to the State's Opposition to his Application.  (Doc. No. 31 at 14.)  As Harvey's  Motion was denied by the state appellate court, Respondent argues this claim was not properly presented and should be denied on that basis alone.  Respondent also argues this claim was not "fairly presented" to the state appellate court because, even if it were deemed "properly presented" in his App. R. 26(B) Application, this claim was not set forth as an ineffective assistance of appellate counsel claim but, rather, as a "free-standing" claim of sentencing error.  Finally, Respondent argues, summarily, that the trial court correctly stated the law and Harvey was not misinformed about the maximum sentences as to Counts Two, Three, and Four.

-48-

As an initial matter, Respondent is correct that Harvey failed to include this ground for relief in his App. R. 26(B) Application.  (Doc. No. 16-1, Exh. 17.)  In his "Motion for Leave to File An Answer to Appellee's Response to Appellant's Rule 26(B) Application," Harvey for the first time raised the argument that "the trial court clearly misinformed the Appellant of the correct maximum sentence is Counts 2, 3, and 4."  (Doc. No. 16-1, Exh. 20 at 222.)  On July 21, 2011, the State moved to dismiss Harvey's "Motion for Leave to File an Answer to Appellee's Response," on the grounds an "Answer" to the State's brief in opposition to Harvey's Application was not authorized by Appellate Rule 26(B).  (Doc. No. 16-1, Exh. 21.)  On August 18, 2011, the state appellate court denied Harvey's App. R. 26(B) Application as untimely.  (Doc. No. 16-1, Exh. 22.)  The court also stated that "all other pending motions are rendered moot and are hereby denied."  *Id.*

Based on the above, the Court agrees with Respondent that Harvey failed to fairly present this ground to the state appellate court because (1) it was not included in his initial App. R. 26(B) Application; and, (2) it was not presented as a claim of ineffective assistance of appellate counsel in his "Motion for Leave to File An Answer."  However, giving Harvey every possible benefit of the doubt, the Court will nonetheless proceed to consider the merits of this argument as set forth in Harvey's Third Ground for Relief herein.

Counts Two, Three and Four of the Indictment charged Harvey with Gross Sexual Imposition as follows:

> COUNT II: DAVID L. HARVEY, * * * between on or about the 1st day of June, 1994 and on or about the 30th day of June, 1996, at the County of Richland, did have sexual contact with another, not the spouse of the offender, the other person being less than thirteen (13) years of age, whether or not the offender knows the age of the person, in violation of section 2907.05(A)(4), of the Ohio Revised Code, a felony of the third degree.

-49-

COUNT III: DAVID L. HARVEY, * * * between on or about the 1st day of August, 1994 and on or about the 30th day of June, 1996, at the County of Richland, did have sexual contact with another, not the spouse of the offender, the other person being less than thirteen (13) years of age, whether or not the offender knows the age of the person, in violation of section 2907.05(A)(4) of the Ohio Revised Code, a felony of the third degree.

COUNT IV: DAVID L. HARVEY, * * * between on or about the 1st day of April, 1993 and on about the 30th day of June, 1996, at the County of Richland, did have sexual contact with another, not the spouse of the offender, the other person being less than thirteen (13) years of age, whether or not the offender knows the age of that person, in violation of section 2907.05(A)(4) of the Ohio Revised Code, a felony of third degree.

(Doc. No. 16-1, Exh. 1.)  During the plea hearing, the trial court explained the maximum

sentences for the above charges as follows:

THE COURT:          All right.  The second, third, and fourth counts are all third degree felonies under old law, the law that existed prior to 1996. A third degree felony at that time, I believe, carried a variable sentence. Do you know the amounts on that, [Prosecutor] Kvochick?

MR. KVOCHICK:    I have no idea, Your Honor.

THE COURT:          Let me look here. In fact, it's in my office, let me grab that and I will be right back.

A third degree felony under the old law, where there is harm to the individual, carries a maximum sentence of two, two and a half, three or four years up to ten years.  It's a variable sentence. Do you understand the maximum sentence for each of those?

THE DEFENDANT:  Yes.

(Doc. No. 16-1, Exh. 28 at 504.)  The trial court then stated that Count I carried a maximum

sentence of two, three, four or five years up to life imprisonment; and explained that:

THE COURT:          That means the maximum sentence you can receive is life in prison.  There will be at least two, three, or four years of mandatory imprisonment, and the other charges could carry

-50-

up to four to ten years in prison each.  Do you understand
the maximum sentence you can receive?

THE DEFENDANT:  Yes.

(Doc. No. 16-1, Exh. 28 at 505.)  On March 22, 2010, the trial court conducted a sentencing

hearing, at which time it sentenced Harvey to a term of five years to life on Count I; and two

years each on Counts Two, Three and Four.  (Doc. No. 16-1, Exh. 29, at 520.)  The sentences

were ordered to be served consecutively, resulting in an aggregate sentence of eleven years to life.

*Id*. A Sentencing Entry was issued on March 24, 2010.  (Doc. No. 16-1, Exh. 8.)

Even assuming the trial court incorrectly advised Harvey that Counts Two, Three and

Four carried a maximum sentence of ten (rather than two) years imprisonment, the Court finds

Harvey has failed to demonstrate appellate counsel was ineffective for failing to raise this

argument on appeal.  Harvey argues the correct sentence for each of these Counts was 1, 1 ½ , or

2 years imprisonment, with a maximum of two years.  (Doc. No. 33.)  Although the trial court

(allegedly) incorrectly advised Harvey that the maximum sentence for each offense was ten years,

it is undisputed that the court sentenced Harvey to just two years on each Count.  As the trial

court's imposition of two year sentences for Counts Two, Three and Four falls within the range of

what Harvey now claims to be the "correct" sentences for these offenses under pre-1996 Ohio

law, the Court finds Harvey has not demonstrated that appellate counsel's failure to raise this

issue fell below an objective standard of reasonableness.  Harvey has not argued (nor is it

reasonable to assume) that he would not have pled no contest had he been advised that the

maximum sentences for Counts Two, Three and Four were, in fact, less than the maximum

sentences he was advised of during the plea hearing.  Accordingly, the Court finds Harvey has

failed to demonstrate appellate counsel was deficient for electing not to challenge this issue on

-51-

appeal.  Moreover, the Court finds Harvey has not demonstrated he was prejudiced by appellate counsel's failure to raise this issue.  Given the fact that trial counsel did not object to the description of the maximum sentences for these counts, combined with the fact that Harvey was ultimately sentenced within the "correct" sentencing range, the Court finds Harvey has failed to show a reasonable probability that inclusion of this issue would have changed the result on appeal.

Accordingly, and for all the reasons set forth above, the Court rejects Harvey's Third Ground for Relief. [10]

### 2.    Second Ground for Relief

In his Second Ground for Relief, Harvey argues appellate counsel was ineffective because he "did not obtain the complete trial transcripts in this case, never provided Harvey with transcripts from any hearings, and failed to consult with Harvey."  (Doc. No. 30 at 11.)  Relying on the Sixth Circuit's recent decision in *Gunner v. Welch*, 2014 WL 1491860 (6th Cir. April 17, 2014), Harvey contends appellate counsel's failure to do so fell below an objective standard of reasonableness and, therefore, constitutes deficient performance under the first prong of *Strickland*.[11]  (Doc. No. 32.)  Harvey also maintains appellate counsel's failure to obtain and

_____

[10]  In the Petition, Harvey argued, as part of his Third Ground for Relief, that appellate counsel was ineffective for failing to challenge the sentence imposed on Count One.  In his Supplemental Briefing filed with this Court on April 11, 2014, Harvey concedes that, due to his plea of no contest, there is no constitutional error with respect to this sentence.  (Doc. No. 30 at 37-40.)  Thus, the Court deems this sub-part of Ground Three waived and will not address it herein.

[11]  In his Notice of Supplemental Authority filed April 18, 2014, Harvey argues, summarily and for the first time, that appellate counsel was ineffective for failing to inform him of the briefing deadlines for direct appeal and post-conviction.  (Doc. No. 32 at 2.)  This argument was not raised in either the state courts, or in the Petition, Traverse,

-52-

thoroughly review the transcripts, or consult with Harvey regarding grounds for appeal, prejudiced him because it resulted in counsel's failure to raise as constitutional error the two underlying claims set forth the Third Ground for Relief; i.e. the claims that (1) Harvey did not knowingly and voluntarily waive his right to a jury trial; and, (2) the trial court misinformed him of the correct maximum sentences for Counts Two, Three and Four.

Respondent argues appellate counsel was not deficient for failing to obtain a complete set of transcripts because "Harvey had pleaded no contest to the charges against him, reserving only the issue of whether the trial court was correct [when it] ruled that he was competent to stand trial." (Doc. No. 31 at 12.)  Because the "only transcript that was necessary for the appeal was the competency transcript," and both that transcript and the change of plea hearing transcript were provided to the appellate court on direct appeal, Respondent argues Harvey cannot show that his appellate counsel's performance prejudiced him.

Even assuming Harvey's appellate counsel failed to review the complete record or consult with Harvey prior to filing the direct appeal, and assuming further that such failures would constitute deficient performance under the first prong of *Strickland*, the Court finds Harvey has failed to demonstrate prejudice.  The sole basis for Harvey's claim of prejudice with respect to

---

or Supplemental Briefing filed in this Court.  Thus, the Court finds this issue was neither fairly presented to the state courts nor timely presented in the instant action, and will not address it herein.  That being said, the court notes that appellate counsel did, in fact, advise Harvey in writing of the filing deadline for pursuing his direct appeal in the Ohio Supreme Court.  (Doc. No. 16-1, Exh. 17 at 184.)  Appellate counsel also informed Harvey that he was not appointed to represent him on appeal to the Ohio Supreme Court and would not be filing such an appeal on his behalf.  *Id.*  Although appellate counsel does not appear to have advised Harvey of the deadline for filing a post-conviction petition, Harvey does not argue herein that he would have filed such a petition had he known of the deadline.

Ground Two is appellate counsel's failure to raise the two claims underlying Harvey's ineffective assistance of appellate counsel claims in Ground Three.  However, as discussed at length above, the Court has previously found that appellate counsel's failure to raise the claims presented in Ground Three (i.e. waiver of jury trial and failure to advise of correct maximum sentences claims) was not prejudicial because Harvey had failed to demonstrate a reasonable probability that either of those claims would have changed the outcome of the proceedings.

Because Harvey has not shown that either of the issues he believes appellate counsel should have raised were likely to have changed the outcome of his direct appeal, the Court now finds that Harvey has failed to demonstrate he was prejudiced by appellate counsel's performance with respect to Ground Two.  Accordingly, and for all the reasons set forth above, the Court finds Ground Two is without merit.

### V.  Conclusion

For the foregoing reasons, it is recommended that Harvey's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: May 6, 2014

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

-54-